MARY C. ADAMS *vs.* C. POWELL ADAMS.

## May .17, 1878.

**Judgment by Default—Estoppel.**—A judgment by default upon one of several negotiable promissory notes, founded upon one and the same illegal consideration,—no issue upon the fact of consideration being tendered by the complaint—does not estop the defendant from setting up in a second action, upon another of said notes, the defence of illegality of consideration.

**Complaint on Note—Averment of Consideration.**—In a complaint upon a negotiable promissory note no averment of consideration is necessary, as the instrument of itself imports one.

**Agreement for alimony, with the view of securing Divorce.**—An agreement between husband and wife, in respect to alimony, made for the purpose of faciliating a divorce, in proceedings already commenced, or about to be instituted by the one against the other, is void, and a note given in pursuance of such agreement, and upon no other consideration, is also void.

Appeal by defendant from an order of the district court for Dakota county, *Crosby, J.,* presiding, refusing a new trial.

*Parliman & Hodgson,* for appellant.

*Clagett & Searles,* for respondent.

1. The defendant is barred by the former judgment from setting up want of consideration as a defence to the note in suit. The plaintiff in that action alleged that the note sued on was given for value, and the defendant was summoned, and had his day in court, to dispute that and the other allegations of the complaint. By failing to appear, he admitted their truth, and thereupon the court adjudged that the note was given for value. A judgment by default is equivalent to a confession of the material facts alleged in the complaint. *Rowe* v. *Table Mountain Water Co.,* 10 Cal. 444; *Doyle* v. *Hallam,* 21 Minn. 515; *Bradford* v. *Bradford,* 5 Conn. 127; *Gates* v. *Preston,* 41 N. Y. 113; *Green* v. *Hamilton,* 16 Md. 317; *Freeman* on Judgments, §§ 249, 330; and, on principle, should conclude the party as to all matters so confessed as though there had been a verdict for the plaintiff. *Dewey* v. *Peck,* 33 Iowa, 242.

To constitute a bar, there must be an identity of subject-matter, but not an identity of cause of action. This action, being on a different note, is not the same as the former action, and not controlled by the former judgment; but if, in the progress of the suit, it becomes essential to determine any question determined in the first suit, then such subordinate question is *res adjudicata,* and the former judgment upon it is conclusive. The cases go farther, and hold the former judgment conclusive as to "every matter which the parties might have litigated and have had decided, as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defence." *Thompson* v. *Myrick,* 24 Minn. 4; *Harris* v. *Harris,* 36 Barb. 88; *Clemens* v. *Clemens,* 37 N. Y.

59; *Newton* v. *Hook*, 48 N. Y. 676; *Bendernagle* v. *Cocks*, 19 Wend. 207; *Beloit* v. *Morgan*, 7 Wall. 619.

The question of consideration in this case comes within the definition of a litigated question. It has been formally alleged against the defendant, and he has remained silent, upon which presumptive evidence the court has adjudged the fact. *Hitchins* v. *Campbell*, 2 W. Bl. 831; *Aurora City* v. *West*, 7 Wall. 82; *Gardner* v. *Buckbee*, 3 Cow. 120; *Bouchaud* v. *Dias*, 3 Denio, 238; *Doty* v. *Brown*, 4 N. Y. 71; *Babcock* v. *Camp*, 12 Ohio St. 11. Judgment on demurrer is equally conclusive as though the facts were litigated; *Ferrer's Case*, 6 Rep. 8; *Bouchaud* v. *Dias*, 3 Denio, 238; or as though admitted *ore tenus*, before the jury. *Perkins* v. *Moore*, 16 Ala. 17; *Robinson* v. *Howard*, 5 Cal. 428; *Goodrich* v. *City of Chicago*, 5 Wall. 566; *Aurora City* v. *West*, 7 Wall. 82.

2. The judgment-roll, if not conclusive, was yet competent evidence of consideration, and the charge, if erroneous, worked no prejudice. The defendant, to rebut the presumption of consideration, and to show that the note was given in fulfilment of a contract claimed to be void as against public policy, introduced in evidence that contract. But the plaintiff did not sue on that contract, but on the note, and was able to make a *prima-facie* case without resorting to the contract, and the defendant, being *in pari delicto*, ought not to be allowed to take advantage of the illegal contract to defeat plaintiff's *prima-facie* case. *Bibb* v. *Hitchcock*, 49 Ala. 468.

3. The agreement was not void as against public policy. It simply made provision for the alimony the wife should have, in case she succeeded in obtaining a divorce, leaving the husband free to contest the divorce suit, and in no way compelling the wife to institute it; and it also compensated her for relinquishing all interest in her husband's property. *Daggett* v. *Daggett*, 5 Paige, 509; *Dutton* v. *Dutton*, 30 Ind. 452; *Muckenburg* v. *Holler*, 29 Ind. 139; *Stoutenburg* v. *Lybrand*, 13 Ohio St. 228; *Weeks* v. *Hill*, 38 N. H. 199; *Sayles* v. *Sayles*, 1 Foster, 312; *Viser* v. *Bertrand*, 14 Ark. 267;

*Sterling* v. *Sterling*, 12 Ga. 201; *Goodwin* v. *Goodwin*, 4 Day, 343; *Belden* v. *Munger*, 5 Minn. 211; *Barnes* v. *Barnes*, L. R. 1 Prob. & Mat. 505; 2 Bishop Mar. & Div. §§ 28, 235-9, 435.

CORNELL, J. The demand in suit is one of several negotiable promissory notes, which were given by the defendant to the plaintiff, at the same time, and upon one and the same entire consideration. They all originated in the same transaction, having been given in pursuance of an alleged illegal agreement, entered into between the parties while they were husband and wife, for the purpose of procuring a divorce between themselves, in an action then commenced by the plaintiff against said defendant. The defence interposed and relied on in this action is this alleged illegality in the consideration of the note, it being claimed that said agreement was void as against public policy. On the trial, the decision of the case turned solely upon the point that the defendant was concluded from asserting this defence by a former judgment recovered by default on one of these notes, in an action between the same parties, in the court of common pleas of Ramsey county. The correctness of this ruling is the precise question presented for consideration on this appeal.

The record and bill of exceptions before us contain no copy of the complaint in that action, and its purport can only be gathered from the statement that the judgment was rendered "on a certain note, made by the defendant, on the twentieth day of October, 1873, in favor of the plaintiff, for the sum of $1,000, and interest," and on the admitted fact that such note was one of the series above named. It must be assumed, then, that the complaint in that action contained only such allegations as were essential to its validity, and to a recovery upon the cause of action stated, there being no appearance by the defendant. In the statement of a cause of action upon a negotiable promissory note, no consideration need be averred, because the instrument of itself imports one. A complaint which contains no such averment is not, for that cause, de-

murrable.   Moak's Van Santv. 166; *Pinney* v. *King*, 21 Minn.
514.   If, therefore, as must be assumed, no issue was ten-
dered by the complaint in the action in which such former
judgment was recovered, upon the fact of consideration as
respects the note there sued on, it is evident that no question
of illegality of consideration was directly involved, nor was
it passed upon or determined by the judgment, because, be-
ing rendered by default, it was not an adjudication upon any
fact or matter which was not stated in the complaint, or which
the plaintiff would not have been required to prove in the
maintenance of his action under the traverse of a general de-
nial; and under such a denial a valid consideration, in fact,
for the note, need not have been proved, nor could the defend-
ant therein have availed himself of any special defence of
a character such as is interposed by the answer in this action.
*Finley* v. *Quirk*, 9 Minn. 179 (194.)

   The question before us for adjudication, then, is whether
the defendant here is precluded, by this former judgment,
from litigating in this action a question which was not raised
by the pleadings in that action, and hence was not directly
passed upon nor determined, because the note there sued on
originated in the same illegal transaction as the one now in
suit, and a recovery thereon might have been defeated if the
defence which is here set up had been there properly inter-
posed.   As respects the particular note or demand upon
which the recovery was had in that action, the judgment
which was there rendered is a finality, and conclusive of the
rights of the parties thereto, and their privies, not only as to
every matter and defence which was actually presented and
litigated therein, but as to every possible defence or matter
that might have been presented for adjudication.  So far as
that note is concerned, the litigation is forever closed, and the
rights of the respective parties in respect thereto have become
finally fixed and determined.   *Allis* v. *Davidson*, 23 Minn.
442; *Thompson* v. *Myrick*, 24 Minn. 4.   The operative effect,
however, of the judgment, as a bar or estoppel in another ac-

tion between the same parties upon another of said notes not directly involved or passed upon in the former action, though resting upon the same illegal consideration, is limited to the precise points which were then actually controverted, and to the matters which were embraced in the issue there tendered, upon the determination of which such judgment was rendered. *Dixon* v. *Merritt*, 21 Minn. 196; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Davis* v. *Brown*, 94 U. S. 423.

The decision, as well as the instruction, which the court below gave upon this point was, therefore, erroneous, and a new trial must be awarded, unless, as is urged by plaintiff, it is apparent from the whole record that the judgment below is right, notwithstanding such error.

It is contended by plaintiff that the defendant was precluded from impeaching the validity of the note sued on, by showing that it was given in pursuance of a void agreement, because he was a party to such agreement, standing *in pari delicto*. While a court will not aid such a party by relieving him from the effects of an illegal agreement, when once executed, as was the case in *Bibb* v. *Hitchcock*, 49 Ala. 468, cited by plaintiff, it will not prevent him from resisting its enforcement while it remains an executory contract; nor will it extend its aid to either party to enforce any of its provisions. It is conceded here, upon the facts, that the note in question was given in pursuance of the written agreement, and to carry out its provisions. It was, in fact, a part of the agreement, resting wholly upon its validity for support, and the plaintiff now asks the aid of the court in enforcing it. The point is not well taken. *Sayles* v. *Sayles*, 21 N. H. 312.

This brings us to the consideration of the remaining point, which relates to the validity of the agreement. The preservation and the maintenance of the marriage relation, wherever found, are deemed so essential to the public welfare that it has become the settled policy of the law ever to guard and uphold it with a watchful vigilance. It is not within the power of the parties to terminate it at pleasure, or for any

cause. Its dissolution can only be declared by a court of competent jurisdiction, for some specified cause prescribed by law, and which must be ascertained upon proofs taken in the regular course of a judicial proceeding instituted for that purpose. It is not enough that the parties consent to a decree of dissolution, or admit in court the existence of the requisite facts upon which such a decree can be based. The court must be satisfied in every case, upon proper investigation and proofs, and upon its own motion, if necessary, of the truth of the alleged facts upon which the decree is sought, and also that the suit is not being prosecuted by the connivance or collusion of the parties. So careful and strict was the observance of this rule by the late court of chancery, in New York, that in a case where the bill was filed for a divorce on the ground of adultery, and taken as confessed, and where the fact of adultery was so clearly proved as to leave no doubt as to the right of the complainant to a decree, the learned chancellor refused to recognize any right or power in the parties, even after such proofs, but before entry of final decree, to enter into any agreement in respect to alimony, holding that all such agreements were invalid, and, when made without the express sanction of the court on examination, not entitled to any respect, because "their tendency, if respected or approved without such examination, would be to produce collusion between parties, with a view to the dissolution of the marriage contract between them." This doctrine is so well calculated to uphold the policy of the law in respect to the preservation of the marriage relation, and to protect courts, in the administration of proceedings in divorce, from all impositions by means of secret and collusive understandings to effect a separation in fraud of law, as to commend it to our judgment as in every way sound and salutary. Every agreement, therefore, between husband and wife, which contemplates their separation through the intervention of judicial proceedings, and which purports to make provision for the alimony of the wife in the event of a decree of dissolution,

without the sanction of the court in which the proceedings for divorce are being conducted, should, whenever its validity is properly brought in question, receive the most rigid scrutiny, and unless it clearly appears, upon a consideration of its terms, and in view of all the surrounding circumstances, to be one which they clearly had the power to make, it must be treated as a nullity. The authorities are uniform in holding that any contract between the parties, having for its object the dissolution of the marriage contract, or facilitating that result, such as an agreement by the defendant in a pending action for divorce, to withdraw his or her opposition, and to make no defence, is void, as *contra bonos mores*, and that any note executed in consideration and pursuance of any such agreement, is without valid consideration, and void. *Belden* v. *Munger*, 5 Minn. 169 (211;) *Stoutenburg* v. *Laybrand*,13 Ohio St. 228; *Viser* v. *Bertrand*, 14 Ark. 267; *Weeks* v. *Hill*, 38 N. H. 199; *Sayles* v. *Sayles*, 21 N. H. 312.

Testing the agreement in question by these principles, it was clearly illegal and void as against public policy, and the decision of the court in regard to its validity was right. At the time the agreement was entered into, the parties were still husband and wife. It contemplated the fact that divorce proceedings had already been or were about to be instituted by the plaintiff against the defendant, for the purpose of procuring a dissolution of their marriage relations. By its terms, defendant agreed to pay her one thousand dollars down, to execute his four promissory notes, for $1,000 each, with security, and to place the same, together with other property, in the hands of a third party, to be delivered to her upon the happening of the event therein provided, as hereinafter stated. She, on her part, agreed to receive this property or money, "in lieu of and in full alimony in said divorce case," to fulfil and perform the terms of said agreement, and to relinquish all her dower rights and all claims to any property of her said husband. The agreement expressly provides that said notes and other property so placed in escrow are "to be deliv-

ered to her when she shall have obtained a decree of divorce" from her said husband, the defendant, and not before; and if the divorce is not obtained within sixty days, or within a reasonable time from the date of the agreement, August 7, 1873, provided he puts in no appearance or answer in the case, then said money, notes, etc., are to be redelivered to said defendant, and she shall take her lawful share of his estate, and said instrument of agreement is to have no further force or effect. It does not appear that this agreement was ever brought to the attention of the court in which the divorce proceedings were pending, nor that the defendant ever put in any appearance therein, or in any way contested the suit, but it does appear that a decree of divorce was rendered October 18th, following.

It is clear that the parties had no legal capacity to enter into this contract at the time it was made; and the inference from its provisions, taken in connection with the admitted facts, is quite strong, if not conclusive, that both parties desired a separation, and, with the view and for the purpose of facilitating that result, entered into this agreement, fixing its terms, so far as concerned the question of alimony and the division of property, in the full expectation and with the implied understanding that plaintiff would prosecute her suit for divorce to a speedy close, and that the defendant would not appear to contest the same. Unless such was the implied understanding, it is difficult to discover any good reason why the delivery of the notes and property, and the further operative effect of the instrument of agreement, were made dependent upon the fact that a decree of divorce should be obtained within sixty days, or within a reasonable time, provided there was no appearance or answer put in by the husband, defendant. One of these notes was a demand note, without interest, that did not become due and payable until the divorce was obtained. Parties are not ordinarily desirous of hastening the maturity of such their obligations. The only purpose, therefore, so far as we can discover, of the stipulation limit-

ing the time within which such divorce was to be obtained was to induce the plaintiff to procure an early decree, in accordance with the desire of the defendant; and it can hardly be supposed that he intended to obstruct the accomplishment of this object by any contest. Considering all the provisions of the agreement, in connection with the circumstances, the implication arises that its leading purpose, and its effect, was to facilitate the divorce without any contest, and that both parties colluded together to bring about that result.

Conceding, however, the competency of the parties thus to contract with each other, and that the court below erred in its construction of the agreement, we ought, nevertheless, to send the case for a new trial, for it was clearly the duty of the court, in case it had any doubt as to its construction, and as to the purpose of the parties in making it, to allow the fullest inquiries to be made, not only into the surrounding circumstances, but into the motives and secret understanding, if any, of the parties, tending to show any collusion in the procurement of the divorce, and their purpose in making the agreement. It is quite probable that these inquiries were not fully prosecuted at the trial, because of the ruling of the court· upon the effect of the agreement that made such inquiries unnecessary.

Judgment reversed and new trial ordered.